```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
UNITED STATES OF AMERICA      :
                              :
v.                            :     Criminal No. 3:11cr121(AWT)
                              :
MICHAEL J. DALY               :
                              :
------------------------------x
```

**RULING ON MOTION TO SET ASIDE PLEA AGREEMENT**

On July 12, 2011, defendant Michael J. Daly waived indictment and pled guilty to a one-count Information charging him with embezzlement by a court officer in violation of 18 U.S.C. § 645. In connection with the guilty plea proceeding, the government and Daly entered into a plea agreement (Doc. No. 9) (the "Plea Agreement"). Robert and Michelle DiLieto have filed a motion, pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, to have the plea agreement set aside. (See Doc. No. 20). For the reasons set forth below, the motion to set aside the plea agreement is being denied because Robert and Michelle DiLieto are not victims for the purposes of the CVRA.

**I.  Factual Background**

In November 2009, the Office of the United States Trustee ("USTO") made an informal referral to the government concerning Daly's conduct as the trustee for the bankruptcy estates of Lehman Brothers, Inc. ("Lehman Brothers"), Steeplegate Associates, and Norwich Historic Preservation Trust, LLC

-1-

("NHPT").  In January 2010, the government executed search warrants at the defendant's home and office.  During the execution of the warrant at the defendant's office, agents found in a desk drawer several pieces of jewelry that had been entrusted to the defendant in his capacity as trustee of the bankruptcy estate of Bolin and Company.

Until he resigned in July 2010, the defendant was trustee of the bankruptcy estate of Robert and Michelle DiLieto.  Following the defendant's resignation, Ronald Chorches was appointed successor trustee.  In late 2010, the government was informed by the USTO and Michelle DiLieto that the defendant had submitted time sheets to successor trustee Chorches that overstated the hours the defendant had spent working as trustee for the DiLieto bankruptcy estate.  No formal referral concerning the DiLieto estate was made by the USTO, but on December 7, 2010 Michelle DiLieto met with an agent of the Federal Bureau of Investigation ("FBI") and provided him with information about an alleged fraud committed by Daly against the DiLieto estate.  The information received by the agent was forwarded to the United States Attorney's office, and the government incorporated the allegations into its investigation of the defendant's conduct as a bankruptcy trustee.  The government represents that the FBI entered Michelle DiLieto into its victim notification system.

On March 21, 2011, the defendant submitted a fee application to the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") in connection with his work

as trustee for the DiLieto estate.  The amount of the fee the defendant applied for was much less than the amount reflected in the time sheets submitted by the defendant to successor trustee Chorches in 2010.  In March 2011, the DiLietos filed an objection to the defendant's fee application.  The USTO filed an objection in July 2011.  Hearings in the Bankruptcy Court on the fee application began in September 2011.

The one-count Information to which the defendant pled guilty on July 12, 2011 charges that:

> Between on or about January 13, 2009 and February 11, 2009, in the District of Connecticut, the defendant, MICHAEL J. DALY, who was then a trustee of the United States Bankruptcy Court for the District of Connecticut, unlawfully retained money that came into his hands by virtue of his official relation, position or employment, to wit, the defendant MICHAEL J. DALY, unlawfully appropriated for his own use approximately $11,100 belonging to the bankruptcy estate of a debtor, which money came into his charge as trustee of the United States Bankruptcy Court for the District of Connecticut.
> All in violation of Title 18, United States Code, Section 645.

(Information (Doc. No. 1).)  The parties agree that the essential elements of the offense are: "(1) [t]he defendant was a trustee or other officer of a United States court; (2) [m]oney came into the defendant's hands by virtue of his official position; and (3) [t]he defendant converted any part of this money to his own use or to the use of another without lawful authority." (Plea Agreement at 1.)

The Plea Agreement includes a stipulation of offense conduct in which the defendant and the government agreed that the offense

conduct that gave rise to the defendant's agreement to plead guilty to the Information was the defendant making four unauthorized withdrawals from the "Debtor-in-Possession" account of Lehman Brothers while he was serving as trustee of the Lehman Brothers bankruptcy estate. The total amount of the four unauthorized withdrawals was $11,100. The Plea Agreement contains a section concerning satisfaction of the defendant's federal criminal liability, which reads in pertinent part as follows:

> The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut (1) as a result of his participation in the criminal activity that forms the basis of the information in this case; and (2) as a result of his conduct while serving as a bankruptcy trustee in the United States Bankruptcy Court for the District of Connecticut, including, but not limited to, his conduct as trustee for the estates of Steeplegate Associates, Norwich Historic Preservation Trust, LLC, Bolin and Company, and Michelle DiLieto.

(Plea Agreement at 7.) The Plea Agreement also contains the following provision:

> The defendant further agrees that he will decline to seek fees in the United States Bankruptcy Court for work performed as trustee for the bankruptcy estate that is the subject of the count of conviction. The defendant further agrees that he will decline to seek fees in the United States Bankruptcy Court for work performed as trustee of the bankruptcy estates of Norwich Historic Preservation Trust, LLC, Steeplegate Associates, and Bolin and Company, if the Court determines at sentencing that the defendant's actions as to those estates should be included as relevant conduct for the purposes of calculating the applicable offense level under the United

States Sentencing Guidelines.
(Plea Agreement at 6.)  Thus, the defendant agreed that he would decline to seek fees with respect to the Lehman Brothers bankruptcy estate and that, if the court determined that the defendant's actions with respect to NHPT, Steeplegate Associates and/or Bolin and Company are relevant conduct, he would decline to seek fees for work performed as trustee for any such bankruptcy estate, but there was no such agreement with respect to the DiLieto bankruptcy estate.

Prior to the plea proceeding on July 12, 2011, the government notified the successor trustee of the Lehman Brothers bankruptcy estate and the USTO that the defendant would be pleading guilty to embezzling from the Lehman estate.  In addition, the government notified the successor trustee of the NHPT, Steeplegate Associates, Bolin and Company and DiLieto bankruptcy estates that those estates had been included in the relevant conduct portion of the Plea Agreement.  The government did not notify either Robert or Michelle DiLieto of the defendant's plea.

After the guilty plea, the government sent the United States Probation Office the government's version of the offense conduct, along with voluminous documentation in support of the government's contention that the defendant had engaged in criminal conduct with respect to all five bankruptcy estates.  The defendant filed a response, objecting to some of the government's contentions, and requested that an evidentiary

-5-

hearing be held to resolve certain factual disputes.  The government also met twice with Robert and Michelle DiLieto, primarily to discuss their involvement in the sentencing process. In addition, the government represents that the DiLietos were entered into the victim notification system so they would receive notice of subsequent court proceedings.

The DiLietos contend that because they did not receive advance notice of the defendant's plea, were not given the opportunity to be present, and were not consulted in advance, the plea agreement should be set aside or, in the alternative, the government and Daly should amend the plea agreement to provide that the defendant cannot seek fees for work performed as trustee for the DiLieto bankruptcy estate.

**II. Discussion**

Under the CVRA, a crime victim has the following rights:

> (1) The right to be reasonably protected from the accused.
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
>
> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.
>
> (5) The reasonable right to confer with the attorney for the Government in the case.

>    (6) The right to full and timely restitution as provided in law.
>
>    (7) The right to proceedings free from unreasonable delay.
>
>    (8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. §§ 3771(a)(1)-(8).  "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded [these rights]." 18 U.S.C. § 3771(b)(1).

The DiLietos contend that Daly engaged in conduct with respect to the DiLieto estate that was in violation of 18 U.S.C. §§ 152 (2), (3), (4), (6), (8) and (9), and that because they were directly and proximately harmed by that conduct, they are "crime victims" for purposes of the CVRA.  However, the DiLietos' analysis as to why they are "crime victims" for purposes of the CVRA is not only at odds with a more logical interpretation of the statute, but also at odds with the analysis in In re Rendón Galvis, 564 F.3d 170 (2d Cir. 2009) and the analysis in In Re Local # 46 Metallic Lathers Union, 568 F.3d 81 (2d Cir. 2009).

If one adopts the analysis advanced by the DiLietos, any person who has been directly or proximately harmed by conduct the government believes constitutes criminal conduct has the rights of a "crime victim" for purposes of the CVRA, regardless of whether criminal charges are ever brought based on that criminal conduct.  In many instances the situation will be like that here, where the person who engaged in the conduct is charged with a

crime based on particular conduct and the government contends that additional conduct engaged in by that person constitutes uncharged criminal conduct.  But in some instances, no criminal charge will ever be brought.  In such a situation, almost none of the eight rights enumerated in 18 U.S.C. § 3771(a) could come into play.  However, all of the rights enumerated in § 3771(a) come into play if a person only has the rights of a "crime victim" for purposes of the CVRA no sooner than the point in time when an offense has been charged.  Section 3771(a)(1) makes reference to "the accused."  A person is not "the accused" absent an indictment by the grand jury or some action by the government to bring a charge; one does not become "the accused" simply because another person complains.[1]  Subsections (a)(2), (3), (4) and (7) speak in terms of "proceedings," but there are no proceedings other than before the grand jury until an offense has been charged and there is no basis for interpreting subsection (a)(7) to apply to grand jury proceedings.  Subsection (a)(6) makes reference to "full and timely restitution as provided in law."  As discussed below, a victim has a right to restitution under the applicable statute only after a defendant has been both charged with and convicted of an offense for which restitution can be ordered.  Thus, a more logical interpretation of the statute is that a person has the rights of a "crime victim" for

---

[1] In Hughey v. United States, 495 U.S. 411, 421 (1990), the court noted that: "The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses.  Nothing in the [restitution] statute suggests that Congress intended to exempt victims of crime from the effects of such a bargaining process.

purposes of the CVRA no sooner than the point in time when an offense has been charged.[2]

In addition, the analysis in In re Rendón Galvis and the analysis In re Local # 46 suggest that the determination as to whether a person is a "crime victim" for purposes of the CVRA is made with reference to the conduct underlying the charged offense, which is inconsistent with the analysis advanced by the DiLietos. Cf. Hughey v. United States, 495 U.S. 411, 414 (in case involving the predecessor to 18 U.S.C. § 3663, the Court concluded that "the repeated focus in § 3579 on the offense of which the defendant was convicted suggests strongly that restitution as authorized by the statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction.").

In In re Rendón Galvis, the defendant was charged in a two-count indictment with: "(1) conspiracy to import into the United States, and to distribute with the intent that it be imported, at

---

[2] In In re W.R. Huff Asset Management Co., LLC, the court stated that, "the CVRA does not grant victims any rights against individuals who have not been convicted of a crime." 409 F.3d 555, 564 (2d Cir. 2005). However, that statement was made in the context of a claim by petitioners who asserted that 18 U.S.C. § 3771(a)(6) "entitles them to 'full and timely restitution,' omitting to mention, however, that such restitution must be 'as provided in law.'" Id. at 563 (citing 18 U.S.C. §3771(a)(6)). As discussed below in connection with In re Local # 46, when a crime victim is requesting to enforce, under the CVRA, a right to restitution, the analysis must take into account the fact that a victim only has a right to restitution under the applicable statute if there has been a conviction. Also, the CVRA does provide "crime victims" with rights with respect to the government and the court. This fact would suggest that a victim has rights as a "crime victim" for purposes of the CVRA prior to the point in time when the person charged with the offense has been convicted. So too would the fact that a requirement that there be a conviction before a "crime victim" has rights pursuant to the CVRA would drastically curtail the reach of §§ 3771(a)(1), (2), (3), (4), (5), (7) and (8).

least five kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 952(a), 959(a), 960(b)(1)(B)(ii), and 963; and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B) and 1965(h)." 564 F.3d at 172. The defendant pled guilty to the first charge. The petitioner argued that the defendant's participation in the charged conspiracy was the actual and proximate cause of her son's death, so she had rights under the CVRA. The court concluded:

> The district court did not explicitly impose any *per se* rule defining a victim according to the elements of the crime or offense of conviction. To the extent that the district court adopted the Government's argument in that regard, however, we need not decide here whether such a rule is appropriate because the district court correctly found that, even considering Rendón's factual allegations, there was insufficient evidence of a nexus between Vargas's death and Murillo-Bejarano's participation in the charged conspiracy to import cocaine. . . . While the evidence may suggest some linkages between Vargas's murder and the drug conspiracy, we do not find any clear error in the district court's conclusion that Rendón ultimately failed to show the requisite causal connection between the two. As in Sharp, "there are too many questions left unanswered concerning the link between the Defendant's federal offense and [the petitioner's harm]." [United States v. Sharp, 463 F. Supp. 2d 556, 566 (E.D. Va. 2006).] Because we find no clear error in the district court's finding that Rendón did not establish direct and proximate harm either to herself or to her son resulting from Murillo-Bejarano's participation in the drug conspiracy with which he has been charged and to which he has pled guilty, the district court properly determined that Rendón was not a "crime victim" and thus did not abuse its discretion in denying her motion.

In re Rendón Galvis, 564 F.3d at 175-76. Thus, in In re Rendón

-10-

Galvis, the court concluded that there had to be sufficient evidence of a nexus between the harm to the victim and the defendant's participation in the charged offense, but it did not reach the issue of whether the determination as to whether a person is a "crime victim" for purposes of the CVRA must be made based on the elements of the offense of conviction.  See also In re Stewart, 552 F.3d 1285, 1288 (11th Cir. 2008) ("The question the petition presents is whether petitioners are victims of the criminal conduct as described in the information pending in the district court."); United States v. Turner, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) ("I interpret the definition in § 3771(e) to include any person who would be considered a 'crime victim' if the government were to establish the truth of the factual allegations in its charging instrument.").

In In re Local # 46, the court stated: "For the reasons that follow, we hold that the district court did not abuse its discretion in determining that the conspiracy charge to which Doherty pleaded guilty did not encompass the activity of which Local 46 was a victim." 568 F.3d at 85.  It should be noted that the victim's right at issue in In re Local # 46 was the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).  The qualifier "as provided in law" required that the court consider the applicable provisions of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  The victim only has a right to restitution under the MVRA or the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, with respect

to the offense of conviction.  Therefore, because what was at issue in In re Local # 46 was a crime victim's right to restitution, the focus had to be on the charge to which the defendant pled guilty.  Thus, the analysis in In re Local # 46 is not inconsistent with the conclusion that the determination as to whether person has the rights of a "crime victim" for purposes the CVRA is made with reference to the conduct underlying the charged offense.  One could be a "crime victim" for purposes of the CVRA based on the offense(s) charged, but not be entitled to restitution under the MVRA or VWPA if there is no conviction.[3]

Here, the only charged offense is embezzlement by a court officer in violation of 18 U.S.C. § 645.  Specifically, the Information charges the defendant with embezzling approximately $11,100 from the bankruptcy estate of Lehman Brothers while the defendant was trustee of the estate.  There is no nexus between the defendant's actions with respect to the Lehman Brothers estate and the alleged conduct of the defendant that the DiLietos contend harmed them.  In addition, none of the offenses the DeLietos contend the defendant committed, i.e., violation of 18 U.S.C. §§ 152(2), (3), (4), (5), (6), (8) and (9) is the offense with which the defendant is charged, i.e., violation of 18 U.S.C. § 645.

---

[3] Also, in In re Local # 46, the court noted that "[t]his Court has not yet determined whether the CVRA's definition of crime victim as 'a person directly and proximately harmed as a result of the commission of a Federal offense' is the same as the MVRA definition." 568 F.3d at 85.

**III.  Conclusion**

For the reasons set forth above, the court concludes that the DiLietos are not "crime victims" for purposes of the CVRA. Therefore, their motion to set aside the plea agreement (Doc. No. 20) is hereby DENIED.

The DiLietos should be aware that they have the right, pursuant to 18 U.S.C. § 3771(d)(3), to petition the court of appeals for a writ of mandamus if they object to this ruling.

It is so ordered.

Dated this 1st day of February 2012, at Hartford, Connecticut.

                                                    /s/AWT  
                                            Alvin W. Thompson  
                                    United States District Judge